## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DOLORES O.,**[1]

      **Plaintiff,**

          **v.**

**FRANK BISIGNANO,**[2]
**Commissioner of Social Security,**

      **Defendant.**

      **Case No. 1:23-cv-3505**
      **Magistrate Judge Norah McCann King**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Dolores O. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On July 23, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since April 1, 2017.[3] R. 65, 81, 182–83. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

[3] Plaintiff later amended her alleged disability onset date to January 1, 2018. R. 15, 221.

1

reconsideration. R. 85–89, 91–93. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 94–95. ALJ Joshua Menard held a hearing on November 23, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 30–57. In a decision dated January 26, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged disability onset date through the date of that decision. R. 15–23. That decision became final when the Appeals Council declined review on April 28, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 14, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 14.[4] On that same day, the case was reassigned to the undersigned. ECF No. 15. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec*., 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2018, her amended alleged disability onset date, and the date of the decision. R. 17.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and cervical spine and bilateral knee degenerative joint disease were severe impairments. R. 18. The ALJ also found that the following impairments were not severe: history of right knee medial and lateral meniscus tear; obesity; history of Lyme's disease; history of asthma, eczema, hypothyroidism, heart murmur, and mitral valve prolapse; hyperlipidemia; bradycardia; mitral insufficiency; and cardiac murmur. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of light work. R. 18–22. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a restaurant hostess. R. 22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged disability onset date[5] through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 6; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety

---

[5] The ALJ mistakenly referred to Plaintiff's original alleged disability onset date of April 1, 2017, instead of her amended alleged disability onset date of January 1, 2018.

because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 12.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Michael Sabia, M.D.

On August 8, 2019, Michael Sabia, M.D., Plaintiff's treating pain management physician since March 2019, completed a three-page, check-the-box, and fill-in-the-blank medical source statement. R. 416–18. Dr. Sabia diagnosed Plaintiff with lumbar spondylosis and lumbar disc displacement. R. 416. Identifying Plaintiff's signs/symptoms, Dr. Sabia checked the following boxes: musculoskeletal pain (low back); fatigue; general malaise; difficulty walking/abnormal gait; muscle weakness; muscle spasm; and hot/cold flashes. *Id*. Plaintiff's symptoms and limitations were reasonably consistent with the doctor's medical signs and findings; Plaintiff was credible regarding the severity, duration, frequency, and other factors regarding her pain, fatigue, and other symptoms; and Plaintiff's impairments had lasted or were expected to last at least 12 months. R. 417. Asked to describe the clinical findings and objective signs that supported or were consistent with Plaintiff's medical impairments, Dr. Sabia identified "facet loading maneuver & axial spine pain." *Id*. Dr. Sabia described Plaintiff's treatment: "lumbar medial branch block with physical therapy[.]" *Id*. Plaintiff's prescribed medications were Zanaflex, Gabapentin, and Tramadol, which had the side effects of drowsiness, lethargy, and/or fatigue; dizziness; dry mouth; and blurred vision. *Id*. On a "typical day," these side effects "can be expected to limit the effectiveness of work duties, *i.e.*, difficulty focusing/concentrating for frequent (34% to 66% of an 8-hour workday) periods of time." *Id*. According to Dr. Sabia, Plaintiff would need to lie down or recline for at least a total of 1.5 to 2 hours during the day at

8

unpredictable times. R. 418. Plaintiff's impairments were likely to produce "good days" and "bad days." *Id.* Dr. Sabia responded "N/A" when asked about psychological conditions that affect Plaintiff's physical condition. *Id.* He also noted that Plaintiff was "sensitive to light and sound[.]" *Id.*

**B.    Samuel Sarmiento, M.D.**

Plaintiff presented to Samuel Sarmiento, M.D., for a consultative internal medicine examination on December 30, 2019. R. 529–36. Plaintiff reported that "[s]he does not go to a store or office by herself. She can do laundry. She can do light cleaning. She can feed herself. She can make simple meals by herself. She can dress herself. She can put on/or take off her shoes. She can brush her teeth. She can take a shower or bath." R. 530. She has a valid driver's license and can drive by herself; she can climb up and down a few steps; and she can walk one block. *Id.* Upon physical examination, Dr. Sarmiento noted as follows:

<u>GENERAL OBSERVATION</u>
The examinee is an adult female who appeared in no acute distress. She is well-nourished and appeared appropriate for her stated age. She was able to get on and off the examining table. She was able to dress herself. She was comfortable in a seated position during the interview. An Internal Medicine physical examination was then performed. . . .

<u>SKIN</u>
There were no significant lesions, ulcers, or superficial varicosities based on exam. there was no clubbing or cyanosis[.]

<u>HEENT</u>
Head is normocephalic atraumatic. Visual acuity is right 20/30, left 20/30, bilateral 20/30 without glasses. Visual fields are intact to confrontation. Pupils were equally round and reactive to light. Extraocular movements were intact. There were no scleral icterus or conjunctival petechiae. External ear canals were normal in appearance. Tympanic membranes are normal. No lesions in nares were present. Nasal mucosa is clear. There is no oropharyngeal erythema, exudate, or other lesion.

<u>NECK</u>
There was no evidence of thyromegaly, thyroid nodule, lymphadenopathy, or mass.

9

## CARDIAC

Exam showed regular rate and sinus rhythm. SI and S2. No murmurs, gallop, or rubs are appreciated. Carotid, Radial Pulses, Dorsalis Pedis, and Posterior Tibialis pulses are +2 bilaterally.

## PULMONARY

Lungs were clear to auscultation and percussion bilaterally without rales, rhonchi, wheezing, or coughs.

## ABDOMEN

Abdomen was soft and non-tender, non-distended with normal active bowel sounds. There was no organomegaly. There were no masses or ascites.

## MUSCULOSKELETAL/NEUROLOGICAL

### Upper Extremities

Evaluation of the upper extremities showed decreased range of motion of the shoulders in forward elevation at 90 degrees bilaterally, abduction at 90 degrees bilaterally. There are arthritic changes in both hands. The sensory examination showed decreased sensation to pinprick on the right arm and right hand. Biceps, triceps. and brachioradialis deep tendon reflexes were 2+ bilaterally symmetric. Pinch strength and grip strength were 5/5 bilaterally. Muscle strength of the upper extremities, including the biceps and triceps, were graded at 5/5 bilaterally. The claimant was able to extend her fingers, make a fist, and oppose the thumbs bilaterally.

### Lower Extremities

Evaluation of the lower extremities showed full range of motion of the hips, knees, and ankles bilaterally. There is slight swelling in both knees with arthritic changes. Muscle strength was 5/5 in the lower extremities in hip flexion, leg flexion, leg extension, ankle dorsiflexion, and ankle plantar flexion bilaterally. Patella and Achilles deep tendon reflexes were 2+ bilaterally symmetric. The sensory examination was intact throughout the lower extremities in pinprick and light touch.

### Cervical Spine

Evaluation of the cervical spine showed decreased range of motion in flexion at 30 degrees, extension at 30 degrees, side-bending at 25 degrees bilaterally, and rotation at 40 degrees bilaterally. There was no significant cervical, para-cervical, or trapezium tenderness or spasm. The cervical spine showed a normal lordotic curve.

### Lumbar Spine

Evaluation of the lumbosacral spine showed decreased range of motion inflexion at 35 degrees, extension at 0 degrees, side-bending at 5 degrees bilaterally, and rotation at 10 degrees bilaterally. There was no significant lumbar, paralumbar,

spinous process tenderness or spasm. The lumbar spine showed a normal lordotic curve. There was no lower back pain or radicular symptoms on sitting straight leg raising maneuver. There was a negative straight leg raising test in the supine position.

### GAIT
*The examinee uses a cane. However, she was able to ambulate a short distance during the examination without using her cane. The examinee was able to heel walk, toe walk, and squat without difficulty.* Hand-eye coordination was good.

### Speech Evaluation
Speech is clear and coherent. Thought process was goal directed. The examinee's comprehension and repetition functions were intact. There was no aphasia, stuttering, or involuntary vocalizations.

### Mental Evaluation
The examine is awake, alert, and oriented to time, place, and person. The claimant was cooperative during the examination. The examinee was able to answer questions without difficulty. Mood and affect are normal. Concentration was normal. There was no significant abnormality with thought processing and thought content. Short-term memory is intact with 3/3 objects recalled after 5 minutes. Long-term memory is intact. She was able to recall the name of her high school and date of birth.

### X-RAYs
X-rays of both knees were ordered and reviewed from 1/2/2020.

Bilateral knee x-ray showed moderate to severe DJD in the knees. Chondrocalcinosis. No acute fractures, dislocations or destructive lesions.

Recommended for follow up with physician for abnormal findings[.]

### BLOOD WORK
CMP was ordered and reviewed from 1/4/2020.
CMP showed elevated glucose at 108 and decreased Creatinine at 0.53

### SPIROMETRY
No Spirometry was ordered.

### EKG
EKG shows sinus bradycardia with a rate of 54. Normal tracing otherwise.
Recommended for follow up with physician for abnormal findings.

R. 531–33 (emphasis added); *see also* R. 535–36 (reflecting passive range of motion chart

reflecting these physical findings). Dr. Sarmiento diagnosed Lyme's disease, elevated glucose,

and moderate bilateral knee osteoarthritis. R. 533. Dr. Sarmiento went on to summarize his

findings and conclude as follows:

> **SUMMARY**
> The claimant is a 63-year-old female who is not in any distress. She has decreased
> mobility of both shoulders in forward elevation and abduction. She has arthritic
> changes in both hands. She has decreased sensation to pinprick on the right arm and
> right hand. She was able to handle fine and gross manipulation, including the
> handling of fine and small objects. Grip strength and pinch strength were 5/5 equal
> bilaterally. She has no motor or neurosensory impairment of her lower extremities.
> *She was able to ambulate a short distance during the examination without using
> her cane*. Her mental evaluation is intact.
>
> **CONCLUSION**
> *She was able to ambulate a short distance during the examination without using
> her cane*. She would be able to sit for a reasonable amount time with needed breaks.
> *No significant balance limitations were observed during the evaluation.* She has
> good functionality of her right and left hands. She would be able to handle fine and
> small sized objects. She has no significant limitations to fingering such as picking
> and pinching objects.

*Id*. (emphasis added).

Dr. Sarmiento also completed a fill-in-the-blank and check-the-box form entitled, "Use of

Hand-Held Device[.]" R. 536. Dr. Sarmiento denied that Plaintiff could walk at a reasonable

pace and indicated that she had used a cane since 2014. *Id*. Dr. Sarmiento left blank the

following questions:

> If yes [prescribed], by who?
>
> 3.    On what type of terrain is it used?
>
> 4.    **UNLESS CONTRAINDICATED**, comment on claimant's ability to
> ambulate without assistive device.
>
> 5.    What does the claimant use the device for? [] Walking  [] Standing [] Only
> in certain circumstances.
>
> Explain _____
>
> *    *    *

10.    Does the claimant use the device appropriately?

*Id*. Dr. Sarmiento indicated the assistive device was used for support and balance and that

Plaintiff used the device 70% of the time. *Id*. Plaintiff could walk two blocks with the assistive

device and one-half block without it. *Id*. Plaintiff had effective use of at least one extremity for

carrying while using the assistive device. *Id*. Dr. Sarmiento indicated that Plaintiff had no other

limitations. *Id*.

C.    **State Agency Reviewing Consultants**

Nancy Simpkins[6] conducted an initial review of the record on behalf of the state agency on

September 24, 2019. R. 58–64. Consultant Simpkins found that the record documented spine

disorders, but that additional evidence was necessary to evaluate Plaintiff's conditions. R. 62

("Additional evidence is needed to fully assess the severity of the clmt's conditions but the

claimant has failed to cooperate returning forms (3373, 3369), responding to attempts to obtain

information about her current treatment. CE was offered however the clmt did not respond to

us.") Consultant Simpkins therefore concluded that "[t]here is insufficient evidence to evaluate

the claim." R. 63 (noting further that "claimant has failed to cooperate").

In a note dated May 7, 2020, under "Claim Communications[,]" the state agency noted

that Plaintiff "[c]ontinued to work as a hostess until last day of work of 03/16[/20]; stopped due

to corona virus[.]" R. 74.

Mohammad Rizwan[7] reviewed Plaintiff's medical record upon reconsideration for the

---

[6] Consultant Simpkins' credentials do not appear in the record, but she has a specialty in internal medicine. R. 63–65 (reflecting medical specialty code "19" after her name); *see also* POMS DI 24501.004(B) (reflecting that medical specialty code 19 indicates a specialty in internal medicine).

[7] Consultant Rizwan's credentials do not appear in the record, but he also has a specialty in internal medicine. R. 63–65 (reflecting medical specialty code "19" after his name); *see also* POMS DI 24501.004(B).

state agency on May 11, 2020. R. 66–80. Consultant Rizwan specifically considered the medical

evidence as it appeared in the record at the time, including, *inter alia*, Dr. Sarmiento's

consultative examination. R. 74–75. Consultant Rizwan concluded that Plaintiff's spine disorders

were severe medically determinable impairments. R. 75. According to Consultant Rizwan,

Plaintiff could occasionally (one-third or less of an 8-hour day) lift and carry 20 pounds;

frequently (more than one-third up to two-thirds of an 8-hour day) lift and carry 10 pounds; stand

and/or walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday;

an unlimited ability to push and/or pull (other than shown for lift/carry). R. 77. Consultant

Rizwan explained these exertional limitations as follows:

> Recon case rated as 07 at the initial level. Recent CE showed walking with cane.
> able to walk without the cane. no MDI established for the decreased shoulder
> flexions (90). normal pinch and strength. normal strength of the UEs. Full ROMs
> of the hips/knees and ankles. Strength and sensation intact in the LEs. Xray findings
> of the knees not correlating clinically. Decreased lumbar ROMs. No radicular signs.
> MRI L-spine (2018). Multiple disc bulges without significant stenosis.
>
> Can use cane, frequently, if need[ed.]

*Id*. Consultant Rizwan denied that Plaintiff had any postural, manipulative, visual,

communicative, or environmental limitations. *Id*. Under the heading "RFC – Additional

Explanation[,]" Consultant Rizwan further explained:

> as above. 4/19 exam showed normal gait. no use of AD. Good strength and
> sensations. If favorable, appropriate EOD may be 12/31/19.
>
> Insufficient MER from AOD (4/1/17) till 2/28/19 (2/25/20)
>
> addendum=Rating revised after reviewing the MER again[.]

*Id*. Consultant Rizwan went on to find that Plaintiff could perform her past relevant work as a

restaurant hostess and therefore was not disabled. R. 78–80.

14

### D.    Jill McIntyre, APNC

On November 8, 2021, Jill McIntyre, APNC, a treating source since 2012, completed a check-the-box, and fill-in-the-blank medical source statement, as well as several supplemental questionnaires. R. 741–47. She diagnosed lumbar radiculopathy, neuropathy, and hypothyroidism. *Id*. Identifying Plaintiff's symptoms, Nurse McIntyre checked the following boxes: musculoskeletal pain (thoracic spine, lumbar spine); fatigue; headaches; general malaise; extremity numbness, pain, and/or tingling; difficulty walking/abnormal gait; muscle weakness; muscle spasm; swelling; insomnia/sleep disturbance; leg cramping; dizziness/vertigo/balance problems; and shortness of breath. *Id*. She listed "lower extremity weakness" as the clinical and/or objective sign that supported Plaintiff's medical impairments. *Id*. Plaintiff's impairments had lasted or were expected to last at least 12 months. *Id*. Plaintiff's prescribed medications were Gabapentin and Trazadone, which had the following side effects: drowsiness, lethargy, and/or fatigue; confusion and/or disorientation; dizziness; stomach upset, nausea, and/or diarrhea/constipation; dry mouth; and blurred vision. *Id*. However, these side effects "will be only **mildly troublesome**, i.e., difficulty focusing/concentrating for occasional (6% to 33% of an 8-hour workday) periods of time." *Id*. (emphasis in original). According to Nurse McIntyre, Plaintiff would typically need to supine rest for at least a total of 1.5 to 2 hours on a daily basis at predictable times and Plaintiff's impairments were likely to produce "good days" and "bad days." R. 745. Moreover, depression and anxiety affected and/or resulted from Plaintiff's physical condition. *Id*. According to Nurse McIntyre, Plaintiff could walk one city block without rest or severe pain and, in an average 8-hour working day (excluding periods for breaks, resting or lying down), could sit for a total of less than 2 hours and stand/walk up to one hour. R. 743. She indicated that it was reasonably necessary or recommended that Plaintiff use a cane or other

assistive device when engaging in occasional standing/walking. *Id*. Plaintiff could never continuously lift and carry even less than 10 pounds without rest or severe pain. *Id*. "Pain is present, such as to prevent this patient from performing normal, full-time work activities on a frequent (more than 3-4 days per month) basis." R. 744. Walking, bending, stooping, moving of extremities, etc., would likely result in greatly increased pain, "to such a degree as to cause total abandonment of the task." *Id*. "Fatigue is present, but should only prevent this patient from performing normal, full-time work activities on an occasional (approximately 3-4 days per month) basis." R. 747. According to Nurse McIntyre, Plaintiff had a moderate[8] limitation in her ability to perform at a consistent pace without an unreasonable number and length of rest periods, and a mild limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; she had no other limitations in her mental abilities and the aptitudes needed to perform unskilled work. R. 746.

## V.    DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to determine whether Plaintiff's use of a cane was medically necessary and failed to include the use of a cane in the RFC, and erred when evaluating the medical opinion evidence. *Plaintiff's Brief*, ECF No. 6, pp. 13–20; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–4. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with

---

[8] A moderate limitation means that Plaintiff's "ability to function in this area is seriously limited and less than satisfactory, but not precluded and that there is a substantial loss of ability to perform the work-related activity and that functioning in this area is precluded up to 1/3 of the workday." R. 746.

determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that is] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Additionally, an ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or

17

simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter,* 642 F.2d at 705).

For claims filed after March 27, 2017,[9] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the

---

[9] As previously noted, Plaintiff's claim was filed on July 23, 2019.

consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). However, the ALJ is not required to employ any special or magic language when considering opinion evidence in accordance with the applicable regulations. *Cf. Diaz*, 577 F.3d at 504; *see also Tyler E. K. v. Comm'r of Soc. Sec*., No. 21-9623, 2022 WL 3913559, at *6 (D.N.J. Aug. 31, 2022) (finding that the ALJ appropriately considered the supportability and consistency factors by citing the physician's treatment notes and other evidence in the record).

In the present case, the ALJ found that Plaintiff had the RFC to perform the full range of light work. R. 18–22. In making this determination, the ALJ detailed the record evidence, including, *inter alia*, April 2017 x-rays of the lumbar spine that revealed multilevel degenerative

changes, and a May 2018 MRI of the lumbar spine that revealed multilevel disc bulges without significant stenosis; Dr. Sabia's diagnoses of radiculitis, disc displacement, degenerative disc disease, and spondylosis of the lumbar and cervical spine; the March 2019 lumbar medial branch block injections the resulting 75%+ relief of pain and increased mobility with daily activities; an April 2019 examination that revealed decreased range of motion of the cervical and lumbar spine, facet tenderness in the lumbar spine, muscle spasm in the lumbar paraspinal muscles, and some decreased sensation in the lower extremities, but a normal gait and full motor strength in all four extremities; Plaintiff's report in August 2019 of over 80 percent relief of pain after a lumbar radiofrequency thermal coagulation and that, despite pain that made it hard to walk, get in and out of her car, and stand all day at work, she was standing straighter and sleeping better; Dr. Sarmiento's December 2019 consultative examination, during which Plaintiff reported that she was working, could do laundry and light cleaning, could feed herself and make simple meals, could dress, shower, and brush her teeth, could drive, climb up and down a few steps, and walk one block; Dr. Sarmiento's examination findings of no acute distress, and Plaintiff's ability to get on and off the examining table and comfort in a seated position; generally normal physical findings, including 5/5 muscle strength in the lower extremities with normal reflexes and sensation; Dr. Sarmiento's report that Plaintiff uses a cane but was able to ambulate a short distance without a cane and was able to heel walk, toe walk, and squat without difficulty and that her coordination was good; Dr. Sarmiento's opinion that Plaintiff could ambulate a short distance without using a cane, could sit for a reasonable amount of time with needed breaks, had no significant balance limitations, had good functionality of her hands, could handle fine and small sized objects, and had no significant limitations in fingering; an August 2020 lumbar radiofrequency ablation procedure and a September 2020 sacroiliac joint injection; and March

2021 x-rays of the lumbar spine that revealed spondylosis at L2, L3, and L4 with narrowing of

the disc space at L3-L4. R. 19–20.

> The ALJ explained his RFC for light work:
>
>> Based on the foregoing, the undersigned finds the claimant has the above residual
>> functional capacity assessment, which is supported by the objective medical
>> evidence and opinion evidence, discussed above. The claimant is limited to light
>> work to accommodate her degenerative disc disease and bilateral knee degenerative
>> joint disease. However, she has been working as a restaurant hostess since the
>> alleged onset date, which is a light level job. Although she does not work full time,
>> there is no evidence to support an inability to work at substantial gainful activity
>> levels. In fact, she earned very close to substantial gainful activity in 2019.
>> Moreover, there are no treatment notes of pain management sessions in the record
>> since 2019, although there are after visit summaries through November 2021. These
>> summaries do not document any examination findings, but they do indicate that she
>> continued to be prescribed Gabapentin, Naprosyn, and Tizanidine (18F at 157).
>> However, this is consistent with the prior records that the undersigned has relied on
>> in finding that the claimant is limited to light work.

R. 22. In the view of this Court, this record contains substantial evidence to support the ALJ's

RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554.

However, Plaintiff complains that the ALJ never determined whether her cane was

medically necessary and failed to include the use of a cane in the RFC. *Plaintiff's Brief*, ECF No.

6, pp. 13–16; *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–4. The Court is not persuaded that this

issue requires remand. "[An] ALJ need not account for use of a hand-held assistive device in an

RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517,

2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). SSR 96-9p addresses the need to find that

such a device is "medically required":

> **Medically required hand-held assistive device**: To find that a hand-held assistive
> device is medically required, *there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or standing, and describing
> the circumstances for which it is needed (i.e., whether all the time, periodically, or
> only in certain situations; distance and terrain; and any other relevant
> information).* The adjudicator must always consider the particular facts of a case.
> For example, if a medically required hand-held assistive device is needed only for

21

prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (emphasis added). "A claimant's testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL 2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. Nov. 25, 2002) ("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). "However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device." *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023) (quoting *Steward v. Comm'r of Soc. Sec.*, No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)). "[T]he failure to do so may require a remand." *Id.* (citations omitted).

In the present case, Plaintiff relies on Dr. Sarmiento's findings and opinion to argue that she made a threshold showing that her cane use was medically necessary. *Plaintiff's Brief*, ECF No. 6, pp. 13–16; *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–4. She points to Dr. Sarmiento's notation that Plaintiff used a cane for ambulation and was able to walk a short distance without a cane. *Plaintiff's Brief*, ECF No. 6, p. 15 (citing R. 532–33). Plaintiff also points to Dr. Sarmiento's opinion that she was unable to walk at a reasonable pace, that she required a cane for support and balance at least 70% of the time, and that she could walk only 2 blocks without a

cane. *Id*. (citing R. 536); *Plaintiff's Reply Brief*, ECF No. 13, pp. 2–3 (citations omitted). According to Plaintiff, this evidence satisfies the threshold showing of medical necessity. *Id*. Plaintiff further contends that the absence in the record of a prescription for a cane[10] is not fatal because Dr. Sarmiento established the need for the cane and the circumstances for which it was needed. *Id*. Under these circumstances, Plaintiff argues, the ALJ was required to expressly determine whether a cane was medical necessary and to include the use of the cane in the RFC. *Plaintiff's Brief*, ECF No. 6, pp. 15–16. The ALJ erred, Plaintiff contends, by simply dismissing Plaintiff's need to use a cane by relying on cherry-picked medical records. *Plaintiff's Reply Brief*, ECF No. 13, p. 4.

Plaintiff's arguments are not well taken. Even assuming for present purposes only—without definitively deciding—that Plaintiff made the threshold showing that a cane was medically necessary,[11] the ALJ sufficiently addressed this evidence. The ALJ specifically considered Dr. Sarmiento's findings and opinion, including those relating to Plaintiff's use of a cane and ability to walk:

> The claimant underwent a consultative examination on December 30, 2019 with Dr. Samuel Sarmiento (7F). She reported a history of Lyme's disease diagnosed in the 1980s, in addition to a history of asthma, eczema, back pain, knee pain, hypothyroidism, heart murmur, mitral valve prolapse, and bradycardia. She reported that she is currently working. She does not go to a store by herself, but she can do laundry, light cleaning, feed herself, make simple meals, dress and shower, brush her teeth, drive, climb up and down a few steps, and walk a block. Her examination revealed her to be in no acute distress. *She was able to get on and off the examining table.* She was comfortable in a seated position. The claimant's upper extremities showed decreased range of motion in the shoulders with reduced elevation and abduction at 90 degrees bilaterally, and she had arthritic changes in

---

[10] Plaintiff testified that Dr. Sabia prescribed a cane, R. 19, 49, but Dr. Sabia did not respond to a question asking whether a cane was either necessary or recommended. R. 419. Nor does it appear that any other provider prescribed a cane. Indeed, the ALJ noted that Dr. Swarna Jayasinghe, Plaintiff's cardiologist, opined that Plaintiff did not need to use a cane. R. 21. Plaintiff's briefing appears to concede that there is no evidence of a prescription for a cane.

[11] Dr. Sarmiento never specifically stated that a cane was "medically necessary." R. 529–36.

the hands. She had decreased sensation to pinprick in the right arm and right hand. Reflexes were normal, and muscle strength and pinch and grip strength were 5 out of 5 bilaterally. She had normal fine motor skills bilaterally. *Her lower extremities showed full range of motion in the hips, knees, and ankles bilaterally, but there was slight swelling in the knees with arthritic changes. Muscle strength was 5 out of 5 in the lower extremities, reflexes were normal, and sensory examination was intact throughout the bilateral lower extremities.* She had decreased range of motion in the cervical and lumbar spine, but no significant tenderness or spasm. *She had negative straight leg raising test in both the sitting and supine positions. <u>It was noted that she uses a cane but was able to ambulate a short distance without using it. She was able to heel walk, toe walk, and squat without difficulty and coordination was good</u>.* Speech and mental evaluations were normal. X-rays of the knees showed moderate to severe degenerative joint disease in the knees. *Dr. Sarmiento concluded that the <u>claimant was able to ambulate a short distance without using her cane</u>,* she would be able to sit for a reasonable amount of time with needed breaks, *<u>had no significant balance limitations</u>,* she had good functionality of her right and left hands and would be able to handle fine and small sized objects, and she had no significant limitations to fingering such as picking or pinching small objects. (7F).

R. 20 (emphasis added). As detailed above, in finding Dr. Sarmiento's opinion only partially persuasive, the ALJ found that "there is no evidence" that Plaintiff "requires the use of a cane." R. 21. In other words, the ALJ did expressly consider Dr. Sarmiento's opinion that Plaintiff needed that a cane. *Id*. In discounting that opinion, the ALJ specifically explained that the record reflects that Plaintiff had a normal gait. *Id*.; *see also Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr. Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c where the ALJ concluded that a physician's opinion was not persuasive because "the limitations [the physician] espoused were not consistent with or supported by other evidence of record" such as, *inter alia*, the treatment records, for instance, [which] indicated a greater ability to walk, lift, and stand"). The ALJ also noted that Dr. Sarmiento observed that Plaintiff was able ambulate a short distance without using a cane. R. 20; *see also Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("The ALJ was not required to repeat this

24

information for the sake of elaborating on [his] findings of persuasiveness [of medical

opinions].""). Moreover, the ALJ's discussion implicitly acknowledged that Dr. Sarmiento's

opinion regarding the need for a cane "for balance" was inconsistent with his finding that

Plaintiff had "no significant balance limitations." R. 536; *see also Pipkin v. Kijakazi*, No. CV 22-

2-E, 2023 WL 411291, at *1 (W.D. Pa. Jan. 25, 2023) ("'[S]upportability relates to the extent to

which a medical source has articulated support for the medical source's own opinion[.]'")

(quoting *Cook v. Comm'r of Soc. Sec.*, No. 6:20-CV-1197, 2021 WL 1565832, at *3 (M.D. Fla.

Apr. 6, 2021)). Accordingly, contrary to Plaintiff's assertion, the ALJ did not "simply dismiss[]

the Plaintiff's need for use of a cane[,]" *Plaintiff's Brief*, ECF No. 13, p. 4, but instead carefully

considered Dr. Sarmiento's opinion and record evidence. Based on this record, the ALJ

sufficiently considered the persuasiveness of Dr. Sarmiento's opinion regarding the use of a cane

and the ALJ's failure to include the use of a cane in the RFC enjoys substantial support in the

record. *See* 20 C.F.R. § 404.1520c(c)(1)–(2); *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637,

639–40 (3d Cir. 2024) (finding that "a judge need not reiterate the magic words 'support' and

'consistent' for each doctor" in order to satisfy the requirements for the supportability and

consistency factors, providing that the judge "weave[s] supportability and consistency

throughout her analysis of which doctors were persuasive"); *cf. Tyler E. K. v. Comm'r of Soc.

Sec.*, No. 21-9623, 2022 WL 3913559, at *6 (D.N.J. Aug. 31, 2022) (finding that the ALJ

appropriately considered the supportability and consistency factors by citing the physician's

treatment notes and other evidence in the record).

Plaintiff also argues that the ALJ's consideration of Dr. Sarmiento's opinion was

defective because, although the ALJ found that his opinion was "partially persuasive[,]" the ALJ

did not specify which portions he found to be persuasive. *Plaintiff's Brief*, ECF No. 6, pp. 17–18.

Plaintiff specifically points to Dr. Sarmiento's examination findings of "decreased range of motion in the shoulders, arthritic changes in both hands, and decreased pin prick sensations in the right hand." *Id*. at 17–18 (citing R. 532). Plaintiff's argument is not well taken. Although Dr. Sarmiento found "decreased range of motion of the shoulders in forward elevation at 90 degrees bilaterally, abduction at 90 degrees bilaterally[,]" R. 532, he did not opine any functional limitations arising from this finding. *See generally* R. 529–36. Nor does Plaintiff identify any specific functional limitations purportedly flowing from this finding that the ALJ should have included in the RFC. *See Plaintiff's Brief*, ECF No. 6, pp. 17–18; *cf. Padgett v. Comm'r of Soc. Sec*., No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

Similarly unavailing is the Plaintiff's highlighting of Dr. Sarmiento's findings of "arthritic changes in both hands, and decreased pin prick sensation to the right hand." *Plaintiff's Brief*, ECF No. 6, pp. 17–18 (citing R. 532). The doctor also found that, despite these findings, Plaintiff's "[p]inch strength and grip strength were 5/5 bilaterally" and that Plaintiff "was able to extend her fingers, make a fist, and oppose the thumbs bilaterally." R. 532; *see also* R. 535 (same). Again, neither Dr. Sarmiento nor Plaintiff identified any functional limitation flowing form these fundings. *See generally* R. 529–36; *Plaintiff's Brief*, ECF No. 6. Based on this record, Plaintiff has not persuaded the Court that the ALJ erred in assessing Dr. Sarmiento's opinion or otherwise erred in failing to include in the RFC any functional limitation arising from that opinion.

In continuing to challenge the RFC, Plaintiff contends that the ALJ erred in his evaluation of Dr. Sabia's opinion. *Plaintiff's Brief*, ECF No. 6, pp. 18–19. The ALJ found that opinion unpersuasive, explaining as follows:

> Dr. Sabia completed a medical source statement questionnaire on August 8, 2019 in which he opined that the claimant would need to lie down for at least one and a half to two hours per workday, and that she would have "good days" and "bad days". He opined that she would be limited to sitting for less than two hours and standing/walking up to one hour per day and that she could rarely lift less than 10 pounds. He indicated that she would be off task 25 percent or more of the typical workday. (3F). This opinion is not persuasive because it is inconsistent with the pain management records that show improvement with injections and medications, a normal gait and full muscle strength in the extremities, and the consultative examination findings showing no pain in the cervical or lumbar spine, and normal findings in the lower extremities. It is also inconsistent with the claimant's own daily activities, including her current work activity after the alleged onset date.

R. 21. The Court finds no error with the ALJ's consideration in this regard. *See* 20 C.F.R. §§ 404.1520c(c)(1)−(2); *Cartwright v. Kijakazi*, No. CV 21-1731, 2023 WL 24071, at *1 n.1 (W.D. Pa. Jan. 3, 2023) (rejecting Plaintiff's challenge to finding a medical opinion inconsistent with other examiner's findings where the "more restrictive opined limitations to, *e.g.*, 'standing 2 hours and walking one hour in [an] eight[-]hour workday' were inconsistent with other sources' findings of 'no muscle atrophy, no neurologic deficit, normal sensation, normal musculoskeletal range of motion including the back and extremities, normal coordination, no motor deficit, normal muscle tone, a normal gait, and normal heel and toe walking'"); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *cf. Newcomer v. Comm'r of Soc. Sec.*, No. CIV.A. 14-161J, 2015 WL 1780205, at

*6 (W.D. Pa. Apr. 20, 2015) ("A claimant's ability to maintain part-time employment is a factor relevant to whether she is disabled.") (citations omitted).

Plaintiff complains that, although the ALJ stated that the injections provided relief to Plaintiff, "the records show that the relief did not diminish all symptoms or positive findings, and in fact caused more pain that [sic] relief." *Plaintiff's Brief*, ECF No. 6, p. 18 (citing R. 488, 450, 506). Plaintiff's complaint is not well taken. As an initial matter, the record citations do not support Plaintiff's assertion that injections caused more pain than relief. For example, the first citation provided by Plaintiff simply reflects the results of an MRI. R. 488. The second citation is a treatment note from April 2019, but it does not state that any injection caused pain and it is not immediately clear why Plaintiff even cited to this page. R. 450. The last progress note cited by Plaintiff reflects that Plaintiff was status post left L4/5 and L5/S1 lumbar radiofrequency thermal coagulation and had achieved over 80% relief of pain with increased mobility and was standing straighter and sleeping better, but that she continued to have pain. R. 506. That record simply does not support Plaintiff's assertion that the treatment caused "more pain" than relief. Moreover, that record also indicates that Plaintiff's "current medications provide[] adequate management[,]" which is consistent with the ALJ's finding that Plaintiff "show[ed] improvement with . . . medications[.]" R. 21. In any event, the mere fact that treatment "did not diminish *all* symptoms or positive findings", *Plaintiff's Brief*, ECF No. 6, p. 18, does not, alone, establish disability. "It is well-settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled." *Ruggiers v. Saul*, No. 4:19-CV-1633, 2020 WL 4447927, at *6 (M.D. Pa. Aug. 3, 2020) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

Plaintiff also points to "diagnoses of displacement of lumbar intervertebral discs, low back pain, lumbar spondylosis, and bilateral lower back pain with sciatica" when arguing that the

records are consistent with Dr. Sabia's opinion. *Plaintiff's Brief*, ECF No. 6, p. 18. However, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). As the ALJ noted, the record reflected, *inter alia*, that Plaintiff had a normal gait and full muscle strength in the extremities and the consultative examination revealed no pain in the cervical or lumbar spine, and normal findings in the lower extremities, among other supportive findings, when discounting Dr. Sabia's extreme opinion. R. 21.

Plaintiff goes on to point to other record evidence that she believes supports Dr. Sabia's opinion, including a May 2018 MRI. *Plaintiff's Brief*, ECF No. 6, pp. 18–19. The ALJ, however, expressly considered that MRI in his narrative discussion, R. 19, before discounting Dr. Sabia's opinion, and, in any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). For all these reasons, the Court is not persuaded that the ALJ erred in considering Dr. Sabia's opinion.

Plaintiff next challenges the ALJ's consideration of Nurse McIntyre's opinion. *Plaintiff's Brief*, ECF No. 6, p. 19. The ALJ also found this opinion unpersuasive, reasoning as follows:

> Jill McIntyre, APNC, completed a medical source statement questionnaire on November 8, 2021 in which she opined that the claimant can walk only one block without rest or severe pain, and that she would be limited to sitting for less than two hours, and standing/walking up to one hour per day and that she could never lift or carry any amount of weight continually. She also opined that the claimant would be prevented from performing normal full time work activities on a frequent basis more than 3 to 4 days per month. She opined that the claimant would need to lie down one and a half to two hours per day. She also opined that the claimant has anxiety and depression and that she has moderate limitations performing at a consistent pace without an unreasonable number and length of rest periods. (15F). This opinion is not persuasive because it is inconsistent with the pain management records that show improvement with injections and medications, a normal gait and full muscle strength in the extremities, and the consultative examination findings showing no pain in the cervical or lumbar spine, and normal findings in the lower extremities. It is also inconsistent with the claimant's own daily activities, including her current work activity after the alleged onset date. Moreover, the opinions regarding the claimant's anxiety and depression are not supported by any treatment records.

R. 21. As with Dr. Sabia's opinion, substantial evidence supports the ALJ's consideration of this opinion. Although Nurse McIntyre had treated Plaintiff for nine years and, as Plaintiff emphasizes, based her opinion on "continued observation of the Plaintiff[,]" *Plaintiff's Brief*, ECF No. 6, p. 19, it is the supportability and consistency of the opinion — not the treating relationship of the provider — that are paramount in an ALJ's evaluation of a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (explaining that the factors of supportability and consistency "are the most important factors" and that an ALJ "may, but [is] not required to, explain how" he considered other regulatory factors, including relationship with the claimant, specialization, and other factors); *cf. Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion

because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

Plaintiff also points to this provider's reliance "on clinical findings and medical records to offer her opinion[,]" including "lower extremity weakness[.]" *Plaintiff's Brief*, ECF No. 6, p. 19 (citing R. 742–43). However, as detailed above, the ALJ considered other instances in the record that reflected full strength or no lower extremity weakness. This Court has already explained that it is the ALJ — not Plaintiff or this Court — who has the duty to resolve factual conflicts. *See Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Plaintiff next points to Nurse McIntyre's finding that Plaintiff "suffers from depression and anxiety, and noted that the Plaintiff would have moderate limitations with maintaining a consistent pace without an unreasonable number of rest periods." *Plaintiff's Brief*, ECF No. 6, p. 19 (citing R. 745). However, other than highlighting this portion of the opinion, Plaintiff does not explain why this finding requires remand. *See id*. As this Court has already explained, where Plaintiff simply points to evidence, but offers no analysis of that evidence, the Court will not construct Plaintiff's arguments for her. *See Padgett*, 2018 WL 1399307, at *2. To the extent that Plaintiff might intend to suggest that the ALJ erred in not including some unspecified mental limitation in the RFC, that suggestion is similarly unavailing. Nurse McIntyre's opinion that Plaintiff suffered limitations flowing from depression and anxiety conflicts with Dr. Sabia's medical source statement that psychological conditions were not applicable. R. 418. Moreover, Dr. Sabia's opinion in this regard is consistent with Plaintiff's own representation that only physical conditions limited her ability to work. R. 253 (listing only physical and no mental conditions in her disability report). Accordingly, Plaintiff has not shown that remand is required based on Nurse McIntyre's opinion.

Finally, Plaintiff complains that the ALJ erred in finding persuasive the opinion of state agency consultant Rizwan Mohammad, who reviewed the record on reconsideration. *Plaintiff's Brief*, ECF No. 6, pp. 17, 19. The ALJ noted that Consultant Mohammad "opined that the claimant could perform light work. This opinion is most persuasive because this doctor is an acceptable medical source, and he has knowledge of the disability system. His opinion is consistent with the medical evidence of record." R. 22 (citation omitted). Plaintiff complains that "the ALJ offers little to no support for his findings, citing generally to the Plaintiff's pain management records to dismiss the same, and ignoring substantial medical evidence" and that the ALJ "states only that it is an acceptable medical source with knowledge of the disability system." *Plaintiff's Brief*, ECF No. 6, pp. 17, 19. Plaintiff's arguments are not well taken. As an initial matter, Plaintiff provides no record citation for his assertion that the ALJ "ignor[ed] substantial medical evidence." *See Plaintiff's Brief*, ECF No. 6, p. 17. The Court will not hunt through the record to find support for Plaintiff's arguments. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir. 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). Moreover, this Court has already detailed all the evidence that the ALJ considered in determining that Plaintiff had the RFC for light work. The ALJ "was not required to repeat this information for the sake of elaborating on [his] findings of persuasiveness [of a particular opinion]." *Serrano*, 2021 WL 4477137, at *3–4.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record, as does his consideration of the opinions of Dr. Sarmiento, Dr. Sabia, Nurse McIntyre, and Consultant Mohammad.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 21, 2025                          _____*s/Norah McCann King*_____
                                                            NORAH McCANN KING
                                                     UNITED STATES MAGISTRATE JUDGE